UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| KATHY KARRAS, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:16-CV-92-CCS |
| | ) | |
| NANCY A. BERRYHILL,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the consent of the parties [Doc. 12]. Now before the Court is the Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 13 & 14] and the Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 15 & 16]. Kathy Karras ("the Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of the Defendant Nancy A. Berryhill, Acting Commissioner of Social Security ("the Commissioner"). For the reasons that follow, the Court will **GRANT IN PART and DENY IN PART** the Plaintiff's motion, and **GRANT IN PART and DENY IN PART** the Commissioner's motion.

I.   **PROCEDURAL HISTORY**

On July 25, 2012, the Plaintiff filed an application for disability insurance benefits ("DIB"), claiming a period of disability which began August 30, 2010. [Tr. 67, 83, 169-71]. After her

---

[1] During the pendency of this case, Nancy A. Berryhill replaced Acting Commissioner Carolyn W. Colvin. Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted as the Defendant in this case.

application was denied initially and upon reconsideration, the Plaintiff requested a hearing. [Tr. 113]. A hearing was held before the ALJ on October 22, 2014 [Tr. 33-66], and on December 16, 2014, the ALJ found that the Plaintiff was not "disabled." [Tr. 1-29]. The Appeals Council denied the Plaintiff's request for review [Tr. 1-5]; thus, the ALJ's decision became the final decision of the Commissioner.

Having exhausted her administrative remedies, the Plaintiff filed a Complaint with this Court on February 24, 2016, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II.  STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986).

The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted).

### III. ANALYSIS

This case involves an application for DIB. An individual qualifies for DIB if he or she: (1) is insured for DIB; (2) has not reached the age of retirement; (3) has filed an application for DIB; and (4) is disabled. 42 U.S.C. § 423(a)(1).

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). A claimant will only be considered disabled if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A); *see* 20 C.F.R. § 404.1505(a).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his

3

impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). The claimant bears the burden of proof at the first four steps. *Id.* The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

The Plaintiff's allegations of error can be summarized into two main arguments. First, the Plaintiff contends that substantial evidence does not support the ALJ's RFC determination because the ALJ failed to properly evaluate the medical opinions from consultative examiner William Keeney, Ph.D., nonexamining state agency physician Rebecca Sweeney, Ph.D.,[2] and treating physician Richard Gaddis, D.O. [Doc. 14 at 6-16]. Second, the Plaintiff argues that the ALJ's Step 4 finding, in which the ALJ concluded that the Plaintiff has past relevant work as a "mortgage

---

[2] In the Plaintiff's brief, she mistakenly identifies Edward Sacks, Ph.D., as the nonexamining state agency physician whose opinion the ALJ adopted. [Doc. 14 at 6-7]. Dr. Sacks reviewed the record at the initial state-agency level. [Tr. 74-75, 78-80]. The ALJ, however, adopted the opinion of Dr. Sweeney [Tr. 24] who reviewed the record at the reconsideration level [Tr. 73-80, 90-97].

4

clerk" and "collections and/or customer service representative" [Tr. 24-25], is likewise not supported by substantial evidence. [Doc. 14 at 4-5]. The Court will address each argument in turn.

    A.       **Medical Opinions of Record**

          1.       **Dr. Sweeney and Dr. Kenney**

The Plaintiff argues that her RFC does not reflect all of the limitations opined by Dr. Sweeney and Dr. Kenney, whose opinions the ALJ generally adopted. [Doc. 14 at 6-8].

Dr. Kenney performed a consultative examination on October 23, 2012 [Tr. 692-94], wherein he opined that the Plaintiff had mild limitations in her ability to understand and remember, moderate limitations in her ability to concentrate, persist, and interact socially, and moderate-to-marked limitations in adaption [Tr. 694]. On May 31, 2013, nonexamining state agency physician Dr. Sweeney conducted a review of the record, which included the opinion of Dr. Kenney. [Tr. 85-92, 95-97]. Dr. Sweeney concluded that the Plaintiff could carry out simple and detailed tasks over a full workday and workweek, she could make routine work related decision but not executive ones, she could relate appropriately to co-workers and frequently with supervisors and the general public, and she could adopt to gradual or infrequent changes. [Tr. 95-96].

In the disability determination, the ALJ concluded that the Plaintiff had the following RFC in regard to mental limitations:

> She can carry out simple and detailed tasks over a full workday and workweek; she has the ability to make routine work related decisions within the range of simple to detailed work tasks; she has the ability tolerate appropriately to co-workers, and she can frequently interact with supervisions and with the general public; and she can adapt to gradual or infrequent changes at work.

[Tr. 18]. The ALJ assigned "great weight" to Dr. Sweeney's opinion, finding that the opinion was

expressed as a function-by-function analysis consistent with Social Security Ruling 96-8p, and that the limitations assessed were consistent with the objective evidence, the Plaintiff's reported activities, and other medical opinions of record. [Tr. 24]. The ALJ also observed that Dr. Kenney's opinion was generally consistent with an ability to perform skilled work, but assigned the opinion "partial weight" because the opinion was not expressed in a function-by-function manner. [*Id.*].

The Plaintiff argues that the ALJ's RFC determination diverges from both doctors' opinions in "several distinct ways," and the ALJ's failure to provide a reasoned explanation for such departure constitutes reversible error. [Doc. 14 at 6-8]. Specifically, the Plaintiff contends that the RFC does not include Dr. Sweeney's finding that the Plaintiff can only make routine work-related decision and cannot perform executive decisions. [*Id.* at 7]. As to Dr. Kenney, the Plaintiff does not identify any functional limitations opined by Dr. Kenney that should have been, but was not, included in the Plaintiff's RFC.

The Court finds no merit in the Plaintiff's contention for several reasons. First, the purported discrepancy between the Plaintiff's RFC and Dr. Sweeney's opinion, as argued by the Commissioner [Doc. 16 at 8], amounts to "a distinction without a difference." While Dr. Sweeny opined that the Plaintiff "can make routine work related decisions *but not executive decisions*," the ALJ limited the Plaintiff to "routine work related decisions *within the range of simple detailed work tasks*." [Tr. 18, 96] (emphasis added). By virtue of being limited to routine work related decisions, logic follows that executive decisionmaking abilities fall outside of the Plaintiff's RFC. The ALJ did not need to include the additional language "but not executive decisions" for the Plaintiff's RFC to be consistent with Dr. Sweeney's opinion. *See Behnke v. Comm'r of Soc. Sec.*, No. 1:10 CV 2105, 2011 WL 5506289, at *5 (N.D. Ohio Aug. 26, 2011) (a medical opinion and

6

RFC "need not be identical to be compatible") *adopted by* No. 1:10CV2105, 2011 WL 5519856 (N.D. Ohio Nov. 10, 2011) (citing Soc. Sec. Rul. 96-5p, 1996 WL 374183, at *5 (July 2, 1996)). Second, the Plaintiff's contention that her RFC does not include additional limitations assessed by Dr. Kenney is equally unpersuasive. Dr. Kenney simply assessed the severity of the Plaintiff's ability to perform work-related activities in terms of "mild," "moderate," or "marked" but did not translate his findings into any specific functional limitations. Moreover, the Plaintiff does not identify any particular functional limitation that should have been included in her RFC. The ALJ found Dr. Kenney's opinion generally consistent with skilled work, and the Plaintiff has not provided any evidence to the contrary.

Accordingly, the Court finds the Plaintiff's allegations of error in this regard not well-taken.

### 2. Treating Physician Dr. Gaddis

The Plaintiff submits that the ALJ did not give "good reason" for rejecting the opinion of Dr. Gaddis.

Dr. Gaddis is the Plaintiff's primary care physician who, in relevant part, treated the Plaintiff for depression and anxiety. On June 14, 2013, Dr. Gaddis completed a Medical Opinion Questionnaire, opining on how the Plaintiff's mental and emotional capacities are affected by her impairments. [Tr.720-22]. Dr. Gaddis indicated that the Plaintiff would be unable or have a serious limitation performing the following: interact appropriately with the public; travel in unfamiliar places; use public transportation; understand, remember and carry out detailed instructions; deal with the stress of semiskilled and skilled work; maintain attention for 2 hour segments; maintain regular attendance and be punctual within customary, usually strict tolerances; make simple work-related decisions; complete a normal workday and workweek without

7

interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; respond appropriately to changes in a routine work setting; and deal with normal work stress. [Tr. 721-22]. Dr. Gaddis further explained that the Plaintiff has poor coping skills, and she would be absent from work more than twice a month. [Tr. 722].

The ALJ assigned "minimal weight" to the opinion for several reasons. [Tr. 24]. First, the ALJ observed that Dr. Gaddis's findings were not supported by his treatment notes which "did not provide documented clinical signs to support such limits." [*Id.*]. Second, when comparing Dr. Gaddis's treatment notes to his opinion, the ALJ found that the functional limitations assessed appeared to be based upon the Plaintiff's statements and not clinical examination findings. [*Id.*]. Lastly, the ALJ determined that the limitations were excessive given the record as a whole. [*Id.*].

Under the Social Security Act and its implementing regulations, if a treating physician's opinion as to the nature and severity of an impairment is (1) well-supported by medically acceptable clinical and laboratory diagnostic techniques and (2) is not inconsistent with the other substantial evidence in the case record, it must be given "controlling weight." 20 C.F.R.§ 404.1527(c)(2). When an opinion does not garner controlling weight, the appropriate weight to be given to an opinion will be determined based upon the length of treatment, frequency of examination, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the opinion. *Id.* The ALJ must also give "good reasons" for the weight given to a treating source's opinion when it is not given controlling weight. *Id.*

Moreover, a decision denying benefits "must contain specific reasons for the weight given

to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for the weight." Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5 (July 2, 1996). Nonetheless, the ultimate decision of disability rests with the ALJ. *See King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984); *Sullenger v. Comm'r of Soc. Sec.*, 255 F. App'x 988, 992 (6th Cir. 2007).

The Plaintiff contends that the ALJ "gave no obvious consideration to" several factors enumerated in 20 C.F.R. § 404.1527(c), such as "Dr. Gaddis is likely to be the medical professional most able to provide a detailed, longitudinal picture of [the Plaintiff's] medical impairment," the length of treatment and frequency of examination, or the nature and extent of the treatment relationship. [Doc. 14 at 14-15]. The Court disagrees. The ALJ acknowledged throughout his decision that Dr. Gaddis was the Plaintiff's primary care and treating physician and discussed in detail Dr. Gaddis's examination findings and treatment records. [Tr. 19-24]. Moreover, nothing within 20 C.F.R. § 404.1527(c)(2) mandates that every factor be explicitly discussed. *See McClain-Nelson v. Comm'r of Soc. Sec.*, No. 12-14490, 2014 WL 988910, at *7 (E.D. Mich. Mar. 13, 2014) ("[A]n ALJ is not required to discuss every factor listed in 20 C.F.R. § 404.1527[(c)]."); *see also Buchert v. Comm'r of Soc. Sec.*, No. 3:13-CV-01418, 2014 WL 1304993, at *7 (N.D. Ohio Mar. 27, 2014) (holding same). The ALJ need only consider the regulatory factors in weighing a treating physician's opinion.

The Plaintiff also maintains that the reasons cited by the ALJ for discounting Dr. Gaddis's opinion does not amount to "good reason." [Doc. 14 at 14]. The Plaintiff argues that the ALJ only gave "one basis, that it was not consistent with his treatment notes or the record as whole" and that the ALJ failed to identify any treatment note or other record evidence that contradicts the opinion.

9

[*Id.* at 14-15]. The Court finds that the ALJ gave three reasons for declining to give more weight to Dr. Gaddis's opinion and each reason cited by the ALJ was "good reason" supported by the record.

In reaching this conclusion, the Court observes that the ALJ first cited to the lack of corroboration within Dr. Gaddis's own treatment notes. The ALJ recognized that the Plaintiff suffered from depression and anxiety but that Dr. Gaddis's treatment notes indicated improvement. [Tr. 19-23]. Specifcally, Dr. Gaddis noted that the Plaintiff was doing better emotionally, she was only mildly depressed, she demonstrated appropriate mood and affect, and she reported greatly diminished anxiety after her involvement in a lawsuit had been resolved. [*Id.*]. "ALJs may discount treating-physician opinions that are inconsistent with substantial evidence in the record, like the physician's own treatment notes." *Leeman v. Comm'r of Soc. Sec.*, 449 F. App'x 496, 497 (6th Cir. 2011). While the Plaintiff cites to other treatment records authored by Dr. Gaddis to argue that the Plaintiff's mood was unstable, [Doc. 14 at 15-16 n.8], "[i]f substantial evidence supports the Commissioner's decision, this Court will defer to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Longworth v. Comm'r Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005) (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)).

The ALJ also noted that the limitations assessed by Dr. Gaddis appeared to be based on the Plaintiff's statements. The ALJ based his finding on the fact that Dr. Gaddis's examination findings were disproportionate to the limitations assessed. For example, the ALJ referenced treatment notes wherein Dr. Gaddis remarked that in August and September 2012, the Plaintiff demonstrated partial symptom improvement with counseling and decrease in anxiety, in August 2013, the Plaintiff was noted as only mildly depressed, and in January 2014, despite suffering from

depression and anxiety at times, the Plaintiff was noted to be doing better emotionally. [Tr. 23]. As observed by the Sixth Circuit Court of Appeals, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Workman v. Commissioner of Social Security*, 105 F. App'x 794, 801 (6th Cir.2004) (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir.1989)).

Finally, the ALJ concluded that Dr. Gaddis's opinion was also inconsistent with other record evidence. In this regard, the ALJ discussed other evidence in addition to Dr. Gaddis's treatment notes that demonstrated the Plaintiff showed improvement in response to counseling and other mental health treatment. In August 2012, the Plaintiff reported diminished anxiety during a counseling session following the resolution of a lawsuit where she had been sued for breach of contract. [Tr. 23]. Later that same month, the Plaintiff showed improvement with crying spells and being socially withdrawn. [*Id.*]. Dr. Gaddis agreed that the Plaintiff's anxiety had decreased. [*Id.*]. Moreover, the ALJ observed that the Plaintiff's daily living activities, including the ability to bath and dress herself, change the bed linens, wash clothes, sweep the flow, vacuum, wash dishes, care for her ailing mother for six months, and attend appointments and her daughter's softball games, undermined the Plaintiff's alleged inability to perform work-related activities. [*Id.*].

Accordingly, the Court finds the ALJ's decision, when viewed in its entirety and not merely the portion in which Dr. Gaddis's opinion is assigned minimal weight, demonstrates that the ALJ provided a reasoned explanation, supported by substantial evidence, for finding that Dr. Gaddis's opinion was inconsistent with his own treatment notes, appeared to be based on the Plaintiff's subjective allegations, and was inconsistent with other substantial evidence in the record.

11

**B.     Step Four**

The Plaintiff maintains that the ALJ's Step Four finding is not supported by substantial evidence.

At Step Four, the ALJ found that the Plaintiff has past relevant work she is able to perform given her RFC. [Tr. 24-25]. In making this finding, the ALJ concluded that the Plaintiff could perform her prior jobs as "a mortgage clerk (sedentary and [specific vocational preparation ("SVP")] 5, skilled) and collections and/or customer service representative (sedentary/light and SVP 4, semi-skilled/SVP 5, skilled)." [Tr. 24]. That ALJ found that both jobs could be done as actually performed by the Plaintiff and as generally performed in the national economy. [Tr. 25].

"A claimant bears the burden of proving she cannot perform her past relevant work either as she performed the job or as the job is generally performed in the national economy." *Ellis v. Astrue*, No. 3:11-CV-535, 2012 WL 5304203, at *5 (E.D. Tenn. Oct. 4, 2012) (internal citations omitted) (citing *Studaway v. Sec'y of Health and Human Servs.*, 815 F.2d 1074, 1076 (6th Cir. 1987)). Past work is relevant if three conditions are met: (1) the work was performed at the level of substantial gainful activity, (2) the job was performed long enough for the claimant to learn it, and (3) the job was performed in the past 15 years. 20 C.F.R. § 404.1560(b)(1). "Past work experience must be considered carefully to assure that the available facts support a conclusion regarding the claimant's ability or inability to perform the functional activities required in this work." Social Security Ruling 82-62, 1982 WL 31386, at *2 (Jan. 1, 1982). Moreover, "the Commissioner's decision must explain why the claimant can perform the demands and duties of the past job . . . ." *D'Angelo v. Comm'r of Soc. Sec.*, 475 F. Supp. 2d 716, 723 (W.D. Mich. 2007).

The Plaintiff asserts that the mortgage clerk job was misclassified by the ALJ because the Plaintiff testified she never worked as a mortgage clerk and the two Work History Reports of

12

record, which differ from one another, led the vocational expert ("VE") to conclude that the Plaintiff's job was more akin to "a customer service person." [Doc. 14 at 4 n.4]. The Plaintiff also maintains that she could not perform the job, classified with a SVP of 5, because she did not perform it long enough for it to be considered relevant. [*Id.*].

The Court observes that on the initial Work History Report dated August 7, 2012, which was completed by the Plaintiff's husband [Tr. 223], the mortgage clerk job was identified as "Vanderbilt Mortgage," and the type of business was noted as "Home Financing," with the dates of employment ranging from "2005-2005." [Tr. 215, 218]. No further description of the job or its duties was included. In the second Work History Report dated May 8, 2013, which was more detailed and completed by an examiner with the Social Security Administration, the job was identified as "payment clerk," the type of business was noted as "Vanderbilt Mortgage," and the dates of employment again ranged from "2005 to 2005." [Tr. 224]. Based on a description of the job and responsibilities which was included in the report, the examiner noted that the Plaintiff's job "appears to be a collection clerk [DOT] 241.357-101 S 5." [Tr. 226]. In addition, the examiner noted that the Plaintiff only stayed in her positon for "about 6 months" and that she "did not do this job long enough to be considered relevant." [*Id.*].

During the administrative hearing the following exchange took place between the ALJ and the VE:

> [ALJ] Q. Okay. And the collection, the home financing, the mortgage financing, what did she do for them?
>
> [VE] A. *The mortgage clerk –*
>
> Q. Yes.
>
> A. *– is my interpretation. If it was done -- it needs to have been done for about six months to have met the SVP*, but a mortgage clerk

13

> is sedentary and an SVP: 5, also skilled work.
>
> Q. Okay. And that, all right. Well, that's fine. *And you say it was only done for six months?*
>
> A. *No, I said if it was – it just gave '05 to '05.*
>
> Q. Well, it was apparently done through 2005.
> A. Well, I didn't know if it was part of '05 or --
>
> Q. *I don't either.* I have no magic powers. Psychic isn't even among the many things I'm good at.
>
> A. It was done for at least six months, it would meet the SVP.

[Tr. 55] (emphasis added). Later in the hearing, the Plaintiff interjected and stated she was never a mortgage clerk. [Tr. 61]. The ALJ then remarked that based on the Plaintiff's earlier testimony that she had memory problems and could not recall specific information in answering questions about her work history, he would have to rely on her written Work History Reports. [Tr. 36, 61]. At this juncture, the VE acknowledged that "[t]here were two work history reports that weren't exactly the same." [*Id.*]. The ALJ proceeded to review the two reports on the record, observing that the first one had the Plaintiff's "job listed as Vanderbilt Mortgage, home financing, 2005," while the second report had more information about her duties and actually identified her job as a "payment clerk at Vanderbilt Mortgage." [Tr. 62].

The Court finds that the ALJ properly characterized the Plaintiff's past job as a mortgage clerk. Social Security Ruling 00-4P envisions that VE testimony will offer the necessary guidance when complex vocational matters arise. 2000 WL 1898704, at *2. Indeed, VE testimony in this case was instructive where the ALJ was faced with conflicting information from the Plaintiff's testimony and differing Work History Reports. The VE explained that his "interpretation" of the record led him to classify the Plaintiff's past job as a mortgage clerk. Even after the Plaintiff

interjected that she was never a mortgage clerk, the VE did not change his opinion. Where the VE based his opinion on the record and the Plaintiff's testimony, the ALJ properly relied on the VE's opinion. Furthermore, the Plaintiff's reliance on the VE's testimony that the job was "kind of like a customer service person" is misplaced as the VE was testifying about the Plaintiff's job as a collections/customer service representative with Character Communications from 2006 to 2010. [Tr. 63-64].

The Court also concludes, however, that substantial evidence does not support a finding that the Plaintiff met the duration requirement. *See* 20 C.F.R. § 404.1560(b)(1). In this regard, the VE unequivocally testified that it was not clear whether the Plaintiff had performed the job of mortgage clerk for at least six months, and the ALJ himself was not sure how long the Plaintiff had performed the job. *See* s*upra* note 12-13, italicized portion. While the examiner who completed the second Work History Report concluded that the job had been performed "for about 6 months," she also concluded that six months was not long enough to be considered relevant. In this regard, the Court notes that in order to perform a job with a SVP of 5, a claimant must have "*[o]ver* 6 months up to and including 1 year" of experience. *Dictionary of Occupational Titles*, 1991 WL 688702 (Jan. 1, 2016) (emphasis added). Thus, the Court finds that the Plaintiff did not perform the job long enough to be considered relevant.

The Plaintiff further contends she could not perform any of the jobs identified by the ALJ as past relevant work because they conflicted with her RFC which limited her to frequent interaction with the general public. [Doc. 14 at 5]. The Court agrees. The VE testified that based on the Plaintiff's RFC, specifically the limitation of frequent interaction with the public, it did not appear that the Plaintiff could perform her past work because they required "more than frequent" interaction. [Tr. 59-60]. The VE and ALJ proceeded to review the May 2013 Work History Report

15

which included a description of the jobs, observing that both the collections and customer service jobs with Charter Communications required that the Plaintiff interact with customers 40 percent of time. [Tr. 63]. The VE, however, did not offer any further opinion, and the ALJ concluded,

> "Well, I think I'm going to have to be the, the tie breaker on this decision making . . . I think we'd have to end up debating to some extent whether or not, and I think that's probably where the debate ends up is to whether or not – performing simple and detailed tasks, the claimant has the ability to relate appropriately to co-workers and frequently with supervisors and the general public."

[Tr. 63-64]. Ultimately the ALJ determined that the Plaintiff retained the ability to perform her past jobs, but it is unclear to the Court how the ALJ reached this decision. The VE testified that the Plaintiff's past jobs appeared to require more than frequent interaction, and the ALJ concluded he would have to make a determination on that point. While such a determination is well within the ALJ's purview as factfinder, his decision does not "explain why the [Plaintiff] can perform the demands and duties of the past job . . . ." *D'Angelo*, 475 F. at 723. The ALJ's failure to offer any explanation for his conclusion signifies a lack of substantial evidence supporting his Step 4 finding.

Accordingly, the Court finds the Plaintiff's allegation of error at Step 4 is well-taken.

## VI. CONCLUSION

Based on the foregoing, the Plaintiff's Motion for Summary Judgment on the Pleadings [**Doc. 13**] will be **GRANTED IN PART and DENIED IN PART**, and the Commissioner's Motion for Summary Judgment [**Doc. 15**] will be **GRANTED IN PART and DENIED IN PART**. The decision of the Commissioner will be remanded to the ALJ to reevaluate Step 4 of the sequential evaluation.

**ORDER ACCORDINGLY**.

                                                  s/ C. Clifford Shirley, Jr.
                                                  United States Magistrate Judge